**Paul STOLARIK, Plaintiff,**

v.

**HENDRICK MANUFACTURING CORPORATION and HIT Products, Defendants.**

No. CV–88–2086.

United States District Court, M.D. Pennsylvania.

June 7, 1991.

Michael J. Donohue, Scranton, Pa., for plaintiff.

Kirk Young Griffin, Boston, Mass., for defendant Hendrick Mfg. Corp.

Thomas Comerford, Bour, Gallagher, Foley, Cognetti, Cowely & Douglas, Scranton, Pa., for defendant HIT Products.

### MEMORANDUM

McCLURE, District Judge.

## I. BACKGROUND

Plaintiff Paul Stolarik was injured while he was operating a panel saw at his place of employment, Contempri Homes. He filed this products liability action against the manufacturer of the saw, Hendrick Manufacturing Corporation ("Hendrick") and the manufacturer of a side blade guard with which the saw came equipped, HIT Products, Inc. ("HIT").

Following a bifurcated trial on the issue of liability only, the jury found, in response to special verdict questions, that the panel saw was defective and that the defect was the cause of Stolarik's injuries, but that he had assumed the risk of injury. The jury further found that the blade guard was not defective. Accordingly, the court entered judgment on the verdict in favor of both defendants on February 15, 1991.

At trial, testimony established that the accident happened while Stolarik was cutting kitchen counter top material to specified sizes. The accident occurred when Stolarik reached behind the blade to separate the two cut pieces of counter top and his right forearm came in contact with the moving blade. The side blade guard was not attached when the accident occurred.

Some time prior to the accident, the side blade guard had been removed by another Contempri employee, John McDermott, and was never replaced. Stolarik had never seen the saw operated with the side blade guard in place and was unaware of its existence.

Plaintiff has filed a post-trial motion requesting a new trial on several grounds. He contends that the court committed reversible error in (1) refusing to instruct the jury that his employer was immune from suit and that the negligence of the employer was, consequently, no defense to plaintiff's strict liability allegations against the defendants; (2) directing that the last sentence of an excerpt from the guard installation manual—which directed the user to remove the inner guard if it was not required by OSHA inspectors—be erased before the manual was shown to the jury; (3) refusing to delay the trial to allow plaintiff to attempt to secure the presence of an expert witness who willfully disregarded a subpoena; and (4) directing the jury, after ten hours of deliberations and two communications stating that they were deadlocked, to change the order in which they were considering the special verdict questions and respond to question five—relating to plaintiff's assumption of the risk—before considering questions one through four if they were unable to agree on those questions.

## II. DISCUSSION

### A. *Employer's immunity from suit*

■ Plaintiff asked the court to instruct the jury that his employer, Contempri Homes, was immune from suit and that any negligence imputed to it was irrelevant and did not provide a defense to plaintiff's strict liability claim against the defendant manufacturers.

Such a charge would have been improper for several reasons. The employer was not a party to the suit,[1] and its conduct was not

1. Joinder of the employer was impermissible. *Erie Castings v. Grinding Supply Co.*, 736 F.2d 99 (3d Cir.1984); *Lawless v. Central Engineering Co.*, 502 F.Supp. 308, 311 (E.D.Pa.1980) and *Heckendorn v. Consolidated Rail Corporation*, 502 Pa. 101, 465 A.2d 609 (1983).

at issue in this action. There was only minimal evidence relating, even tangentially, to the employer's conduct. That evidence was that the HIT side blade guard was removed by a co-employee of Stolarik's and never replaced. This evidence was introduced as a necessary background fact, and there was no suggestion that it was the fault of Stolarik or that he in any way shouldered the blame for its removal. There was, therefore, no reason for the court to instruct the jury that Stolarik should not be held accountable for any negligence of the co-employee. In any event, the charge as a whole accurately conveyed to the jury the law they were to apply in deciding the case, and instructed the jury how and in what context to consider evidence that Stolarik had assumed the risk of injury. They were further instructed to disregard any extraneous legal principles of which they might be aware and decide the case based on the court's instructions to them.

### B. *Special Verdict Questions*

■ The jury deliberated for ten hours. During deliberations, they conveyed five questions to the court and twice informed the court that they were deadlocked. The court then read the modified *Allen* charge approved by the United States Court of Appeals for the Third Circuit in *U.S. Healthcare, Inc. v. Blue Cross*, 898 F.2d 914 (3d Cir.1990) and *United States v. Fioravanti*, 412 F.2d 407 (3d Cir.1969). When the court was informed for the second time that the jury was unable to agree, the court instructed them, over the objections of plaintiff's counsel, to proceed to question five on the verdict slip, without answering questions one through four if they were unable to agree on the response to those questions. There were five special verdict questions in all. Questions one and three asked whether the defendants' respective products were defective, questions two and four asked whether the products of the respective defendants caused plaintiff's injury. The sequential arrangement of the questions and the instructions which accompanied them were such that the jury would not proceed to question five unless

they had first answered all of the preceding questions.

Contrary to plaintiff's contentions, when the jury reported that they were unable to reach a verdict, there was nothing improper in instructing them to skip questions one through four if those were the questions posing the difficulty, and answer question five. The court did not ask and was not informed of any particulars concerning the deliberations and took care to instruct the jury that no such inquiries were being made.

The order in which the questions were placed on the verdict slip had no legal significance whatsoever and was governed solely by an effort to place the questions in some logical order by grouping all questions pertaining to the conduct of defendants first. Question five—the question asking whether plaintiff assumed the risk of injury—could have been placed first from the outset. It was merely happenstance that it was originally placed last and there was, therefore, no error in later changing the order of the questions and instructing the jury to answer them in a different order.

### C. *Exclusion of reference to OSHA*

■ Plaintiff argues that the court erred in redacting a sentence from the panel saw instruction manual which read:

> In most cases OSHA inspectors do not require the inner guard at all. Under these circumstances, install the outer link guard only, but keep the inner guard on hand in case it is required.

Plaintiff contends that the exclusion of these two sentences eliminated "crucial evidence" from the jury's consideration.

That contention is not supported by the facts, and allowing the reference to Occupational Safety and Health Administration ("OSHA") requirements to go before the jury would have been error in any event. The reference in the excerpt quoted is to the removal of a different guard—not the lower side blade guard at issue in this case.

In addition, the court ruled that references to OSHA standards were inadmissible

pursuant to a pre-trial motion in limine filed by plaintiff in which he sought to exclude evidence that the defendants had never received a warning or complaint that the products in question were not in compliance with OSHA standards.

■ Significantly, plaintiff obtained favorable answers to the two special verdict questions regarding the liability of the manufacturer of the panel saw, Hendrick, and therefore even if the questioned redaction was error, it had no effect adverse to plaintiff.

D. *Failure of plaintiff's expert to appear*

■ Plaintiff retained a human factors expert, Steven Wilcox, to testify at trial. According to plaintiff, Wilcox failed to honor their agreement that he would appear on the date scheduled to testify at trial. Trial began on Monday, February 11, 1991 and presentation of plaintiff's case concluded on Tuesday, February 12th at the end of the trial day. Wilcox appeared in the courtroom briefly late on the afternoon of February 12th. After the close of testimony, Wilcox telephoned another attorney who had, apparently, retained him to testify in another case being tried concurrently. After telephoning this second attorney, Wilcox then, for the first time, according to plaintiff's counsel, informed counsel that he had to leave Scranton to testify in the other case then being tried in Delaware. Presented with this unalterable fact, plaintiff's counsel then sought the aid of the court in finding a solution.

Plaintiff made several suggestions to the court, none of which the court followed because none of them was feasible or appropriate under the circumstances. Plaintiff suggested that the court (1) adjourn the trial to allow sufficient time for Wilcox to travel to Delaware, testify there, then return to Scranton to testify; (2) allow Wilcox to testify after the close of plaintiff's case-in-chief, during defendant's case; or (3) issue a bench warrant compelling Wilcox' presence at trial. Adjourning the trail to accommodate the travel schedule of an expert witness would have been inappro-

priate and unfair to the defendants. Representatives from HIT and Hendrick had traveled some distance to attend the trial. Counsel for HIT Products had traveled from his office in Boston, Massachusetts to try the case and delaying the trial for even one day would have caused all parties concerned considerable unnecessary expense and inconvenience. It would have been equally inappropriate and unfair to the defendants for the court to allow plaintiff to present his expert human factors witness during or after the close of defendant's case-in-chief—particularly after plaintiff had had the advantage of hearing the testimony of defendant's human factors expert. Cf. *Kaczmarek v. Allied Chemical Corporation*, 836 F.2d 1055 (7th Cir.1987) and *Benedict v. United States*, 822 F.2d 1426 (6th Cir.1987). Finally, issuing a bench warrant to compel an expert, non-fact witness to testify in a civil action would be wholly inappropriate. Cf. *Fitzpatrick v. Holiday Inns*, 507 F.Supp. 979 (E.D.Pa. 1981).

While it is certainly unfortunate if, as plaintiff contends, Wilcox failed to honor their agreement and disregarded, at the last minute, clear instructions that he was to appear to testify on February 12th, it was not the court's obligation to rectify the situation. Following any of the suggestions proposed by plaintiff's counsel would have infringed on the rights and prerogatives of the other parties to this action.

## ORDER

For the reasons stated in the accompanying memorandum, it is ORDERED that:

Plaintiff's post-trial motions filed March 26, 1991 (Record Document No. 64) are denied.