**BRISTOL STEEL & IRON WORKS, INCORPORATED, Plaintiff–Appellant,**

v.

**BETHLEHEM STEEL CORPORATION, Defendant–Appellee.**

No. 93–2358.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1994.

Decided Dec. 5, 1994.

**ARGUED:** William Wilson Lanigan, Somerville, NJ, for appellant. Heman A. Marshall, III, Michael F. Urbanski, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, for appellee. **ON BRIEF:** Frank K. Friedman, Francis H. Casola, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, Edith G. Laver, Law Dept., Bethlehem Steel Corp., Bethlehem, PA, for appellee.

Before HALL and HAMILTON, Circuit Judges, and MacKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge HAMILTON wrote the opinion, in which Judge HALL and Senior Judge MacKENZIE joined.

### OPINION

HAMILTON, Circuit Judge:

Bristol Steel & Iron Works, Incorporated (Bristol) brought an antitrust claim of price discrimination against Bethlehem Steel Corporation (Bethlehem), contending that Bethlehem charged Bristol higher prices for steel goods. *See* 15 U.S.C.A. § 13(a) (West 1973). After eight days of trial, a jury returned a verdict in favor of Bethlehem. Subsequently, Bristol moved the district court for a new trial pursuant to Fed.R.Civ.P. 59(a). The district court denied the motion, and Bristol appealed. Finding no error, we affirm.

### I.

Bristol purchased raw steel from Bethlehem and then fabricated the steel in suitable forms for incorporating into buildings and bridges. Eventually, Bristol concluded that Bethlehem impermissibly charged Bristol higher prices for steel. Bristol therefore instituted suit against Bethlehem, asserting a claim of price discrimination pursuant to 15 U.S.C.A. § 13(a) (West 1973), which provides in pertinent part:

> It shall be unlawful for any person engaged in commerce ... to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....

The gravamen of the complaint is that Bethlehem charged Bristol higher prices for steel shapes and plates than it did other steel fabricators. After a lengthy discovery period extending approximately five years, the case proceeded to trial.

In order to establish its claim of price discrimination, Bristol introduced summaries in chart form of the steel purchase invoices, rather than the invoices themselves, to prove that Bristol was charged higher prices. The Federal Rules of Evidence specifically provide that summaries of prolific evidence may be introduced rather than the underlying evidence. *See* Fed.R.Evid. 1006. Despite the fact that the invoices proper were readily

available, Bristol never moved to admit them into evidence. According to Bristol, these summaries tended to demonstrate that Bethlehem sold the same grade and quality of the same material to different steel fabricators at different prices.

In presenting its case-in-chief, Bethlehem, over Bristol's objection, called William Davis (Davis) and Patrick Loftus (Loftus) as witnesses. Bristol objected to the testimony of Davis and Loftus because they were not revealed as witnesses prior to trial. Bethlehem responded that in the five years in which discovery had been conducted, Bristol never once, by court order or interrogatory, requested a witness list. The district court permitted Davis and Loftus to testify, premising its ruling on two grounds. One, no pretrial order governing management of this action was entered pursuant to Fed.R.Civ.P. 16; thus, there was no mechanism in place to preclude their testimony. Two, despite the fact that discovery lasted approximately five years, Bristol never requested that Bethlehem provide a witness list, nor did Bristol seek an order requiring the exchange of witness lists. Because Bristol never attempted to discover Bethlehem's witnesses, the district court held that Bristol could not now complain. Davis and Loftus contributed to Bethlehem's establishing the affirmative defense of meeting competition pursuant to 15 U.S.C.A. § 13(b) (West 1973), which provides in pertinent part:

> [N]othing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of the services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor.

In addition to the testimony of Davis and Loftus, Bethlehem presented other evidence tending to establish its good faith effort to meet competition as an affirmative defense.

At no point during the trial did Bristol ever move for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. In fact, Bristol explained that it expressly declined to make such a motion. The district court then provided the parties with copies of its proposed jury charge, which included a special verdict form.

The special verdict form was comprised of eight questions. Questions one through six related to the six elements Bristol had to prove to establish its claim of price discrimination and provided the jury with the option of answering each question "yes" or "no" with respect to whether each particular element had been satisfied. At the end of these six questions, in all capital letters, the special verdict form recited that if the jury answered "no" to any of these six questions, it had rendered a verdict for Bethlehem and should not proceed to question seven, but if the jury had answered "yes" to all of these questions, it should proceed to question seven. Question seven asked whether Bethlehem had established the affirmative defense of meeting competition. After question seven, the special verdict form stated, again in all capital letters, that if the jury answered "yes" to question seven it should proceed no further because it had returned a verdict in favor of Bethlehem. Question eight asked the jury to calculate damages.

Immediately after being charged, the jury commenced deliberating and returned the next day to continue deliberations. On the second day of deliberations, the jury sent a note to the district court, stating: "We are deadlocked on # 3. What is the proof required to establish a sale? [D]o we need two invoices?" (J.A. 531). Bristol invited the district court to submit the invoices to the jury, but the district court declined the invitation, explaining that since the invoices were not in evidence, they could not be submitted to the jury. The district court responded to the jury by explaining that summaries had been introduced instead of the actual invoices. (J.A. 428).

Subsequently, the jury sent another note to the district court, again stating that it was deadlocked on question three. The district court instructed the jury that if it was deadlocked on question three, it should consider the other questions because it might be able to render a verdict even if question three was not resolved. In rendering its instructions, the district court explained that even if the jury could not agree on question three, a

verdict for Bristol required that all six questions be answered affirmatively. Additionally, the district court explained that if the jury affirmatively answered question seven, a complete verdict had been reached, regardless of any deadlock with respect to question three. (J.A. 434–36). Thus, the jury was merely instructed to continue deliberating and to attempt to answer the other special verdict questions. Conspicuously, the district court stated that it realized that the jury may or may not be able to agree on any other questions. Asserting that the district court coerced the jury into reaching a verdict because it directed them to particular questions, Bristol objected to this instruction. The jury was excused to continue deliberations. Twenty minutes later, it returned a verdict in favor of Bethlehem, finding that Bethlehem had established the affirmative defense of meeting competition. The only question answered by the jury was question seven, the one inquiring whether Bethlehem successfully established its affirmative defense that it in good faith charged Bristol a higher price in order to meet competition.

Subsequently, Bristol moved unsuccessfully for a new trial, and this appeal followed. On appeal, Bristol raises the following contentions: (1) Bethlehem failed to establish the affirmative defense of meeting competition by a preponderance of the evidence; (2) the district court erred in permitting Davis and Loftus to testify; (3) the district court erred in not submitting the invoices to the jury during its deliberations; and (4) the district court erred in instructing the jury to proceed in light of the deadlock over question three.

## II.

■ The decision to grant or deny a new trial rests with the sound discretion of the district court, and we review this decision for a clear abuse of discretion. *See Wilhelm v. Blue Bell, Inc.,* 773 F.2d 1429, 1433 (4th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986). Absent a clear abuse of discretion, we shall not disturb this decision; indeed, we have opined that this decision " 'is not reviewable upon appeal, save in the most exceptional circumstances,' "

*Lindner v. Durham Hosiery Mills, Inc.,* 761 F.2d 162, 168 (4th Cir.1985) (quoting *Aetna Casualty & Sur. Co. v. Yeatts,* 122 F.2d 350, 354 (4th Cir.1941)). We commit this decision to the district court "because the district judge is in a position to see and hear the witnesses and is able to view the case from a perspective that an appellate court can never match." *Weil v. Seltzer,* 873 F.2d 1453, 1457 (D.C.Cir.1989). Given the district court's intimate familiarity with the trial, the district court "may weigh evidence and assess credibility in ruling on a motion for a new trial." *Wilhelm,* 773 F.2d at 1433. The Eleventh Circuit has observed that these principles are particularly apt if, as here, the district court denied the motion for a new trial. *See Blu-J, Inc. v. Kemper C.P.A. Group,* 916 F.2d 637, 643 (11th Cir.1990). In reviewing a grant or denial of a new trial, the crucial inquiry is "whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." *DMI, Inc. v. Deere & Co.,* 802 F.2d 421, 427 (Fed. Cir. 1986). With this circumscribed scope of review, we address Bristol's contentions *seriatim.*

■ Bristol contends that Bethlehem's evidence was insufficient to establish the affirmative defense of a good faith effort to meet competition. We conclude, however, that we are substantially foreclosed from reviewing the sufficiency of the evidence because Bristol, as it conceded, never moved the district court for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. Such an absolute failure precludes all but the most deferential appellate review of the evidence.

In *Coughlin v. Capitol Cement Co.,* 571 F.2d 290 (5th Cir.1978), Coughlin unsuccessfully brought a private antitrust action against Capitol Cement Company (Capitol), asserting that Capitol practiced an orchestrated refusal to sell bulk cement to him. *Id.* at 294–95. Despite the fact that Coughlin never moved for judgment as a matter of law under Fed.R.Civ.P. 50 in the district court, on appeal Coughlin asserted that the evidence was insufficient to support the jury's verdict that Capitol had not engaged in a contract or conspiracy in refusing to sell Coughlin cement. *Id.* at 297. Concluding

that Coughlin's absolute failure to move for judgment as a matter of law precluded virtually any review, the Fifth Circuit declined his invitation to review the sufficiency of the evidence:

> It is well settled that in the absence of a motion for directed verdict,* the sufficiency of the evidence supporting the jury's findings is not reviewable on appeal. Federal appellate courts simply do not directly review jury verdicts. The policy underlying this rule is sound: a party is not permitted to gamble on the verdict and later question the sufficiency of the evidence that led to his defeat.

*Id.* (footnote added) (citations omitted). Similarly, in *Tights, Inc. v. Acme–McCrary Corp.*, 541 F.2d 1047, 1058 (4th Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976), we concluded that a challenge to the "sufficiency of evidence to support a verdict is not reviewable on appeal unless a motion for a directed verdict is made in the trial court." Absent plain error, the Fifth Circuit explained that appellate courts will not review the sufficiency of the evidence because implicit in the party's failure to move for judgment as a matter of law is the belief that the evidence created a jury issue, and the derelict litigant "should not be permitted on appeal to impute error to the trial judge for sharing that view." *Little v. Bankers Life & Casualty Co.*, 426 F.2d 509, 511 (5th Cir.1970). A review of the case law reveals that the courts have concluded that a party's complete failure to move for judgment as a matter of law, barring plain error, generally forecloses appellate review of the sufficiency of the evidence. *See, e.g., Sloman v. Tadlock*, 21 F.3d 1462, 1473 (9th Cir.1994); *Georgetown Manor v. Ethan Allen, Inc.*, 991 F.2d 1533, 1539–40 (11th Cir.1993); *Gopher Oil Co. v. Union Oil Co. of Cal.*, 955 F.2d 519, 526 (8th Cir.1992); *Shipman v. Central Gulf Lines, Inc.*, 709 F.2d 383, 385 (5th Cir. 1983). In such a procedural posture, our scope of review is exceedingly confined, *see Sloman*, 21 F.3d at 1473, being "limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed

which, if not noticed, would result in a 'manifest miscarriage of justice,'" *Coughlin*, 571 F.2d at 297 (quoting *American Lease Plans, Inc. v. Houghton Constr. Co.*, 492 F.2d 34, 35 (5th Cir.1974) (*per curiam* )).

■ Additionally, Bristol's motion for a new trial does not create the avenue for searching review that its failure to move for judgment as a matter of law foreclosed. *See Gopher Oil Co.*, 955 F.2d at 526 (holding that moving for a new trial will not cure the complete failure to move for judgment as a matter of law); *Illinois Cent. Gulf R.R. v. International Paper Co.*, 889 F.2d 536, 541 (5th Cir.1989) (same). Rather, our review focuses on the grant or denial of the new trial, *Coughlin*, 571 F.2d at 297–98, which, as stated, is reviewed for a clear abuse of discretion. Were it otherwise, a party could open the door to review via Rule 59, even though its prior failure closed the same door via Rule 50. In reviewing the evidence through the medium of a motion for a new trial after failure to move for judgment as a matter of law, "we do not review 'sufficiency' in its technical sense. What is at issue is whether there was an 'absolute absence of evidence to support the jury's verdict.'" *Id.* at 298 (quoting *Fugitt v. Jones*, 549 F.2d 1001, 1004 (5th Cir.1977)).

Bristol's contention, that a *plaintiff*'s making a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 against a defense was not available until the Rule was amended in 1993 to make clear that both a claim and a defense must be presented in this fashion, is unconvincing, as is evidenced by its lack of citation to any authority for this contention. The Notes of the Advisory Committee on the 1993 Amendments state that the Rule applies against both plaintiffs and defendants. Our review of the case law discloses that Rule 50 was equally applicable to plaintiffs prior to these Amendments. *See, e.g., Coughlin*, 571 F.2d at 297; *Little*, 426 F.2d at 510. We conclude, therefore, that Bristol was not excused from the requirements of Rule 50 if it intended to challenge the sufficiency of the evidence as to Bethlehem's affirmative defense.

---

\* "Directed verdict" was a former name for judg- ment as a matter of law under Fed.R.Civ.P. 50.

■ Applying these principles, we must only determine whether there was any evidence to support the verdict; and here, there was not an "absolute absence of evidence." The record reveals that there is evidence to support the jury's finding that Bethlehem established the defense of a good faith effort to meet competition as provided in 15 U.S.C.A. § 13(b). For instance, there was testimony that Bethlehem only deviated from its price list in a good faith effort to meet competition. Additionally, documentary reports tended to establish that discounts were in response to competition in the relevant market. As the district court observed, "after having reflected on both the amount of evidence produced, as well as the credibility of that evidence, this court is of the opinion that the jury's finding [that the affirmative defense was established] is clearly supported by the evidence." (J.A. 569). Delving into Bristol's challenge to the sufficiency of Bethlehem's evidence establishing the defense is accordingly unwarranted.

### III.

Next, Bristol contends that Davis and Loftus should not have been permitted to testify, despite the fact that there was no court-directed mechanism for discovering witnesses and that Bristol never attempted to discover Bethlehem's witnesses. Bristol objected at trial to the testimony of Davis and Loftus, premising its objection primarily on two grounds. First, Bristol asserted that its case was prejudiced by Davis and Loftus's testimony because it was never informed that they would testify and the parties had previously revealed the identities of some witnesses. Second, Bristol posited that although Bethlehem's other witnesses were named at *voir dire,* Davis and Loftus were not. The district court overruled this objection at trial because Bristol never sought a witness list via court order ·or through discovery and there was no pretrial order governing this case as provided for by Fed. R.Civ.P. 16. Bristol repeats these arguments to us, but like the district court did at trial, we reject them.

### A.

■ The district court has broad discretion concerning the admissibility of testimony, and thus we review its ruling to permit or refuse a witness from testifying for an abuse of discretion. *See Mills v. Des Arc Convalescent Home,* 872 F.2d 823, 826 (8th Cir.1989) (holding that the district court did not err in permitting a witness to testify, even though the witness was not mentioned until the date of trial, and further noting that with the exception of bad faith, undisclosed witnesses should seldom be barred from testifying). Articulating a need to balance relevant testimony against prejudicial surprise, in *Spray–Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226 (7th Cir.1982), *aff'd,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), the Seventh Circuit established a test to be applied in considering a party's request to call a witness not included on a pretrial witness list:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) bad faith or willfulness in failing to comply with the court's order.

*Id.* at 1245. Other courts have used this test in examining the propriety of a party's attempt to call a witness not listed on a witness list. *See, e.g., Morfeld v. Kehm,* 803 F.2d 1452, 1455 (8th Cir.1986).

■ While this test is not directly applicable here because it applies to cases in which there are pretrial orders and witness lists, we conclude that the test is sufficiently analogous to provide guidance in resolving the propriety of permitting Davis and Loftus to testify. Applying these factors, we conclude further that permitting Davis and Loftus to testify was proper. First, while Bristol was prejudiced by their testimony, Bristol never made any effort to discover Bethlehem's witnesses; thus, any prejudice was Bristol's own making; moreover, as is true, relevant evidence is always prejudicial. Second, Bristol ably cross-examined Davis and Loftus, so it

was able to cure some of the prejudice that it incurred. Third, disrupting a lengthy trial after five years of discovery over the testimony of two witnesses is to be avoided where reasonably possible. Fourth, while Bethlehem could have informed Bristol of these witnesses, it neither disobeyed any order nor failed to answer fully any interrogatory by not doing so. Because these factors apply in the more stringent cases governed by a pretrial order that a party is attempting to circumvent, the lesser standard presented here, *i.e.*, no such circumvention because no such order or interrogatory exists, further bolsters the conclusion that the district court did not abuse its discretion in permitting Davis and Loftus to testify since the circumstances here are less compelling.

### B.

■ With respect to Bristol's assertion that since the names Davis and Loftus were not raised at *voir dire*, this precludes their testifying, *voir dire* serves the purpose of obtaining a fair and impartial jury, *see Person v. Miller*, 854 F.2d 656, 665 (4th Cir. 1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1119, 103 L.Ed.2d 182 (1989), not of operating as a discovery tool by opposing counsel. Additionally, Bethlehem's statements at *voir dire* with respect to witnesses by no means purported to be exhaustive or definitive: while Bethlehem never mentioned the names of Davis and Loftus at *voir dire*, Bethlehem read "*some* names of *some* people who *perhaps* are going to be witnesses for Bethlehem...." (J.A. 38). A finding that the district court abused its discretion in permitting Davis and Loftus to testify would strain credulity.

### IV.

■ Bristol posits next that the district court erred in refusing to give the jury the invoices in response to its question concerning the documents necessary to establish a sale. While the summaries were introduced, Bristol never moved to have the invoices proper admitted into evidence, despite the fact that they were readily available. Concluding that because the invoices were not introduced into evidence, the district court

declined to submit them to the jury. Bristol objected to this ruling, principally contending that because the summaries were admitted into evidence, the evidence on which they were predicated is likewise deemed admitted. This contention collapses in the wake of precedent and common sense.

The summaries were prepared under the auspices of Federal Rule of Evidence 1006, which provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The original, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Rule 1006, therefore, expressly contemplates that the summaries are introduced as the evidence. Recognizing that compiling and presenting all the underlying evidence is a Herculean task that drains judicial resources, *see United States v. Strissel*, 920 F.2d 1162, 1163 (4th Cir.1990) (*per curiam*), and hence the reason for the Rule, we have observed that the salient purpose of Rule 1006 "is to provide a practicable means of summarizing voluminous information," *United States v. Bakker*, 925 F.2d 728, 736 (4th Cir.1991). Explaining that the Rule obviates the need to introduce the underlying evidence, the *Bakker* court expressly concluded that Rule 1006 "does not require that the original voluminous material be introduced into evidence[.]" *Id.* Indeed, *Bakker* noted that because the summaries themselves are the evidence, "no need exists to introduce the underlying voluminous material into evidence." *Id.* at 737. We review the district court's ruling under Rule 1006 for an abuse of discretion. *See Strissel*, 920 F.2d at 1163.

We conclude that the district court properly refused to submit the invoices to the jury. First, the jury never requested any invoices, but rather asked for the proof required to establish a sale. We cannot, therefore, accept Bristol's assertion that the jury demanded the invoices. Second, Bristol never moved to have the invoices admitted into evidence, despite their availability. Bristol

cannot complain that the district court erred in refusing to submit the invoices to the jury because Bristol could have introduced them into evidence. Third, we find Bristol's contention that the district court erred in *refusing* to submit to the jury documents that were *not* in evidence to be anomalous; a bedrock principle of American jurisprudence is that jurors render verdicts based on the admitted evidence. . *See, e.g.*, 2 John W. Strong, *McCormick on Evidence* § 328, at 383 (West 1992). Permitting documents not in evidence to have entered into the calculus for determining the jury's verdict would have been erroneous. *See Herman v. Hess Oil Virgin Islands Corp.*, 379 F.Supp. 1268, 1278 (D.V.I.1974), *aff'd*, 524 F.2d 767 (3d Cir.1975). Finally, as *Strissel* and *Bakker* so unequivocally demonstrated, Bristol's assertion obviates Rule 1006 because the Rule expressly provides that summaries of voluminous evidence are introduced instead of the underlying evidence, and that is precisely what happened here. Under Bristol's interpretation, Rule 1006 would be nugatory if *both* the summaries *and* the invoices themselves had to be admitted into evidence.

## V.

Finally, Bristol contends that the district court erred in instructing the jury with regard to the special verdict form, particularly in urging it to proceed in light of the deadlock, thereby leaving the special verdict form incomplete. The gravamen of Bristol's contention is that had the district court supplied the invoices, the jury would have found in Bristol's favor and not been "coerced" into finding that Bethlehem established its affirmative defense of meeting a competitive price.

 Serving the salutary purpose of "identify[ing] the basis for the jury's verdict, and thus ... avoid[ing] confusion, appellate uncertainty, and the need for additional proceedings," special verdicts are generally favored. *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1310 (2d Cir.1993). Special verdicts also have the advantage of "facilitat[ing] effective appellate review." *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1220 (8th Cir.1990). The answers to special verdicts should be reconciled under any rational theory consistent with the evidence, and equally the answers should be harmonized if possible. *See Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963). The district court should regard the special verdicts as expressing a rational view of the case. *See Toner v. Lederle Labs.*, 828 F.2d 510, 512 (9th Cir.1987), *cert. denied*, 485 U.S. 942, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988). If the case can be viewed so that the jury's answers to the special verdicts are complete and consistent, that view controls. *See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). The use of special verdicts rests with the discretion of the district court, *see Deadwyler v. Volkswagen of America, Inc.*, 884 F.2d 779, 782 (4th Cir. 1989), *cert. denied*, 493 U.S. 1078, 110 S.Ct. 1131, 107 L.Ed.2d 1037 (1990), and the exercise of this discretion extends to the language used in the form, *see Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir.1988), and we review for an abuse of discretion, *see Deadwyler*, 884 F.2d at 782. Additionally, the district court exercises the discretion to determine whether the jury's findings as evidenced by the special verdicts will support the verdict rendered or whether certain issues should be resubmitted to the jury. *See Hauser v. Kubalak*, 929 F.2d 1305, 1308 (8th Cir.1991). The courts have recognized that partially completed special verdict forms are sufficient, provided that the answered questions support the verdict and the unanswered questions, if answered in favor of the nonprevailing party, would not render the judgment erroneous. *See, e.g., Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1453 (Fed. Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985); *Bridges v. Chemrex Specialty Coatings, Inc.*, 704 F.2d 175, 180 (5th Cir.1983); *Slade Gorton & Co. v. Millis*, 794 F.Supp. 175, 177 (E.D.N.C.1992); *Kociemba v. G.D. Searle & Co.*, 707 F.Supp. 1517, 1533–34 (D. Minn. 1989); *see also* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2510, at 519–20 (West 1971).

■ Application of these precepts compels us to conclude that the special verdict form as answered was proper. Section 13 provides for an affirmative defense, even if Bristol establishes a *prima facie* case. *See* 15 U.S.C.A. § 13(b). Moreover, establishing this defense differs from establishing Bristol's claim, and the special verdict form adequately reflects this. Even if, therefore, Bristol established a *prima facie* case as evidenced by the jury's answering the first six questions in its favor, Bethlehem could still prevail based on the meeting competition defense. Here, the jury determined that Bethlehem established the affirmative defense, and there is evidence to support this conclusion. Accordingly, a special verdict finding that the affirmative defense was established is legally sufficient and hence not improper or erroneous.

■ Likewise, we reject Bristol's assertion that the district court "coerced" the jurors into a verdict on instructing them that they could answer other questions rather than coming to a halt on any deadlocked question. We have previously recognized that the district court is often compelled into advancing extemporaneous explanations in order to make plain the jury's task when using special verdict forms. *See Deadwyler,* 884 F.2d at 783. Indeed, in explaining that the district court is obligated to instruct fully the jury, we opined that "[o]nce 'a jury makes known its difficulty,' it is the duty of the judge to be responsive to that difficulty, and he is 'required to give such supplemental instructions as may be necessary.'" *Price v. Glosson Motor Lines, Inc.,* 509 F.2d 1033, 1036 (4th Cir.1975) (quoting *Walsh v. Miehle–Goss–Dexter, Inc.,* 378 F.2d 409, 415 (3d Cir.1967)). The district court, therefore, is compelled to allay the jury's difficulty, and perfunctory recitation of the instructions is often insufficient to satisfy the district court's obligations to the jury. *See Swift v. R.H. Macy's & Co., Inc.,* 780 F.2d 1358, 1361 (8th Cir.1985). In analyzing "whether a supplemental instruction is coercive," the totality of the circumstances is considered. *See Reazin v. Blue Cross & Blue Shield of Kan., Inc.,* 663 F.Supp. 1360, 1445 (D. Kan.1987), *aff'd in pertinent part and remanded in part,* 899 F.2d 951 (10th Cir.), *cert. denied,* 497 U.S.

1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990). Factors entering the calculus for resolving this issue include jury deadlock, compromise of the individual juror's convictions, colloquy between the district court and the foreman, limitations on the length of the deliberations, and the "obnoxious" nature of the charge. *Id.*

■ Analysis of these principles reveals that the district court did not coerce the jury into rendering a defense verdict; rather, the district court aided the jury by attempting to resolve its difficulty. First, the jury was deadlocked over answering question three. Second, the jurors were not told to sacrifice their convictions. Third, the district court placed no limitations on the length of deliberations. Fourth, the tenor of the district court's instruction was not obnoxious. The crux of the district court's instruction was that the jury should continue to deliberate, and "there was nothing improper in instructing [the jurors] to skip questions ... posing difficulty," and attempt to resolve other questions. *See Stolarik v. Hendrick Mfg. Corp.,* 767 F.Supp. 88, 90 (M.D. Pa.1991) (holding that the district court could, if informed by jurors that they were deadlocked on certain questions, instruct the jury to proceed to answer the final special verdict question addressing whether the defense of assumption of the risk had been established), *aff'd without opinion,* 961 F.2d 210 (3d Cir.1992). Like the *Stolarik* court, here the district court was not informed of any particulars about deliberations, only that the jury was deadlocked on a particular question. Rather than charting a particular course for the jury to follow, as Bristol contends, the district court simply instructed the jury to attempt to consider questions other than question three. In so instructing the jury, the district court was fulfilling its obligation to the jury.

## VI.

Because Bristol failed absolutely to move for judgment as a matter of law—and in fact expressly declined this gambit—our review of the sufficiency of the evidence is limited to determining whether there was an absolute absence of evidence to support the verdict.

Here, that quantum of evidence is satisfied. With respect to the evidentiary rulings, the district court did not abuse its discretion in permitting Davis and Loftus to testify in light of the fact that there was no pretrial order and Bristol made no effort to discover the identities of witnesses. Additionally, the district court did not abuse its discretion in refusing to admit the invoices, nor in instructing the jury with regard to answering the questions on the special verdict form. The judgment of the district court is accordingly affirmed.

*AFFIRMED.*