**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1189

MARY LAFONTAINE PARMENTER,

Plaintiff - Appellee,

versus

ROLLINS FINANCIAL COUNSELING INCORPORATED;
JOSEPH R. ROLLINS,

Defendants - Appellants.

Appeal from the United States District Court for the District of
South Carolina, at Beaufort.    Patrick Michael Duffy, District
Judge.   (CA-03-2150-9-23)

Argued:  May 22, 2006             Decided:  June 29, 2006

Before WILKINS, Chief Judge, and MOTZ and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Frank W. Virgin, SLAUGHTER & VIRGIN, Atlanta, Georgia, for
Appellants.  Edward Steven Feig, ARENT FOX, P.L.L.C., New York, New
York, for Appellee.  **ON BRIEF:** Brian C. Pitts, SMOOT, PITTS,
ELLIOTT & BIEL, Hilton Head Island, South Carolina, for Appellants.
Eric S. Lent, ARENT FOX, P.L.L.C., New York, New York, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Joseph R. Rollins and his investment advisory company, Rollins Financial Counseling Incorporated, (collectively, "Rollins") appeal a district court judgment entered in favor of Mary LaFontaine Parmenter following a jury verdict for Parmenter on her claims alleging that Rollins mismanaged her investment account. We affirm.

I.

In early 1999, Parmenter, a widow with little investment experience, transferred her investment portfolio to Rollins and granted him full discretionary authority over her account. The portfolio was then valued at $729,586. Parmenter informed Rollins that she needed to withdraw $6,000 per month from her account to cover living expenses. Rollins initially invested Parmenter's assets in a mix of stock and bond mutual funds, but by late 1999 he had moved the account entirely into stock mutual funds, a substantial portion of which were aggressive, higher-risk investments. By early 2000, the value of Parmenter's account had increased significantly, peaking at approximately $1.1 million. Thereafter, however, the account value declined dramatically. In May 2002, Parmenter terminated Rollins' services; at that time, her account was worth $342,105.

Parmenter brought this action against Rollins, alleging claims for breach of fiduciary duty, negligence, breach of contract, negligent misrepresentation, constructive fraud, and violation of the Investment Advisers Act of 1940, see 15 U.S.C.A. § 80b-6 (West 1997). A jury returned a verdict for Parmenter on each of her claims, awarding her $423,000 in compensatory damages and $22,000 in restitution (for management fees she paid to Rollins). Rollins moved, inter alia, for a new trial on several grounds, but the district court denied his motion.

## II.

Rollins first contends that the district court erroneously admitted expert testimony offered by Parmenter regarding damages. Rollins argues that the expert's method of calculating damages was unreliable. See Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999). We review a district court decision to admit or exclude expert testimony for an abuse of discretion. See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999).

At trial, Parmenter called F. John Hermann, an experienced investment advisor and arbitrator, to testify, inter alia, regarding the appropriate measure of damages resulting from Rollins' alleged mishandling of Parmenter's investments. Hermann testified that Rollins breached his legal and professional duties

3

to Parmenter in several ways, including placing her assets into investments that were not suitable for her investment objectives and needs. Hermann testified that Rollins' most serious breach occurred when, after Parmenter's account had increased in value, he failed to take corrective action by shifting Parmenter's assets into more conservative investments that could have achieved her investment goals with less risk. Based on various points during a nine-month period when Hermann claimed Rollins could have taken such corrective action, Hermann identified different possible starting values for calculating damages. Using these starting values, Hermann calculated how a properly managed portfolio would have performed (assuming the same level of withdrawals), and then subtracted the actual ending value of the account. Based on these calculations, Hermann concluded that the loss attributable to Rollins' mismanagement was between $244,495 and $505,395.

Rollins does not dispute that the general method used by Hermann to calculate damages--comparing actual investment results to those that could have been achieved had the account been properly managed--is generally accepted and reliable. See, e.g., Rolf v. Blyth, Eastman Dillon & Co., 637 F.2d 77, 84 (2d Cir. 1980). Rollins argues, however, that Hermann improperly deviated from this method by using a starting point other than the value of the account when it was first opened. The district court rejected this argument, finding that Hermann's methodology was sufficiently

4

reliable in light of his testimony that Rollins committed multiple breaches of duty and that one of those breaches was his failure to take corrective action to preserve Parmenter's account after it had appreciated.

The decision by the district court to admit Hermann's damages testimony was not an abuse of discretion. Based on his experience, Hermann testified that the appropriate starting value for measuring damages in investment-loss cases is usually disputed and that a starting value other than the opening value of the account is often used. And, as the district court noted, Hermann identified several distinct breaches of duty by Rollins and concluded that the most serious breach occurred after the account value had risen, when Rollins failed to preserve the account by shifting it into more conservative investments. In this regard, Hermann opined that measuring damages using the opening value of Parmenter's account would not fully compensate her for the loss caused by Rollins' mismanagement. Based on this record, the district court did not abuse its discretion in concluding that Hermann's testimony was sufficiently reliable to allow the jury to consider it in assessing damages.[1] See Kumho Tire, 526 U.S. at 150 (explaining that the

---

[1]To the extent Rollins claims that the jury's damages verdict was not supported by the evidence, we disagree. In contrast to Hermann's testimony that Rollins never selected suitable investments for Parmenter's account, Rollins testified that his investment selections for the account were always appropriate--both during the months of its initial buildup and after it had climbed in value. The jury could have reached its verdict, for

5

gatekeeping inquiry for expert testimony "must be tied to the facts of a particular case" (internal quotation marks omitted)). Moreover, Rollins thoroughly challenged Hermann's methods through cross-examination. See United States v. Moreland, 437 F.3d 424, 431 (4th Cir.), cert. denied, 126 S. Ct. 2054 (2006).

III.

Rollins next asserts that the district court should have granted his motion for a new trial on the ground that false evidence was admitted against him. See Fed. R. Civ. P. 59; Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 200 (4th Cir. 2000). The decision whether to grant a new trial "rests with the sound discretion of the district court, and we review this decision for a clear abuse of discretion." Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994). Indeed, this decision "is not reviewable upon appeal, save in the

example, by crediting Rollins' testimony that the investments initially were suitable but accepting Hermann's testimony that the investments were inappropriate once the account value had increased. Indeed, Hermann admitted that Rollins had done "a very good job" building up Parmenter's account during its initial months, J.A. 432, and testified that Rollins' more serious breach was his failure to take corrective action after the account value had risen. Further, Rollins conceded that Parmenter's investment objectives could have been achieved had he shifted her funds into more conservative investments when the account value was near its peak. Finally, the damages award was within the range identified by Hermann.

6

most exceptional circumstances." Id. (internal quotation marks omitted).

During questioning by Parmenter's counsel, Rollins was asked about the accuracy of information he had provided to the SEC in a required annual filing. Specifically, counsel showed Rollins his most recent filing and directed him to a question about whether he was involved in pending litigation, which Rollins had answered "NO." J.A. 1185. Rollins stated that his answer to that question was "clearly, wrong." Id. at 313. Further, in response to later questioning by his own attorney, Rollins testified that his response to the SEC question was an "oversight" and that the filing was being amended to disclose pending lawsuits against him. Id. at 542. After trial, however, Rollins reviewed the instructions and definitions for the SEC filing and discovered that the question at issue did not require him to list private civil actions, and therefore that he had answered the question accurately.

Rollins argues that the admission of this false evidence was prejudicial and warrants a new trial. We conclude, however, that the district court did not abuse its broad discretion in denying a new trial. Assuming that Rollins was surprised by the questions about the SEC filing and that his failure to correct the record before the end of trial was excusable, any prejudice to Rollins was not so great as to require a new trial. Although Parmenter introduced evidence concerning the SEC filing to impeach Rollins'

7

credibility, this evidence was minor in relation to the overall evidence presented against him.[2]  Parmenter introduced extensive evidence concerning Rollins' numerous alleged breaches of legal and professional duties.  In addition, Rollins admitted that he had made another error on the same SEC filing by failing to indicate that providing investment advice was his primary business.[3]

IV.

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED

---

[2]There is no indication that Parmenter or her counsel intentionally presented false evidence.

[3]Rollins also contends that the district court erroneously failed to instruct the jury on various affirmative defenses relating to Parmenter's conduct in connection with her investment losses.  Based on the record, we conclude that the district court did not err in declining to instruct the jury on these defenses.