**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2312**

DALE IHNKEN, trading as Ihnken Productions,

       Plaintiff − Appellant,

    v.

SHERIFF CHARLES JENKINS, in his individual and official capacity;
LARRY SMITH,

       Defendants – Appellees,

    and

JAN GARDNER, in her individual and official capacity; DAVID GRAY, in
his individual and official capacity; KAI HAGEN, in his individual and
official capacity; JOHN "LENNIE" THOMPSON; BILL BIGELOW,

       Defendants.

Appeal from the United States District Court for the District of Maryland, at
Baltimore.  Catherine C. Blake, Chief District Judge.  (1:11-cv-03508-CCB)

Submitted:  November 29, 2016          Decided:  February 3, 2017

Before KEENAN, WYNN, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

––––––––––––––

Neil S. Hyman, LAW OFFICE OF NEIL S. HYMAN, LLC, Bethesda, Maryland, for Appellant. Kevin Karpinski, Sandra D. Lee, KARPINSKI, COLARESI & KARP, P.A., Baltimore, Maryland, for Appellees.

––––––––––––––

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Dale Ihnken brought this action challenging the revocation of a land-use permit he obtained from the Frederick County Health Department in connection with a music festival Ihnken organized in June 2009. Contending that Frederick County Sheriff Charles Jenkins and Zoning Commissioner Larry Smith (collectively, "Defendants") revoked the permit without sufficient notice and without providing Ihnken an opportunity to be heard, Ihnken alleged that Defendants violated his procedural due process rights under the Constitution and Maryland law. Following a four-day trial, a jury found in favor of Defendants.

On appeal, Ihnken contests the denial of his pretrial motion for summary judgment on his federal and state law claims, as well as the denial of his post-trial motion for judgment as a matter of law or, in the alternative, for a new trial. For the reasons set out below, we affirm.

I.

Working through his eponymous production company, Ihnken organized various music and arts festivals throughout the country in the late 2000s. The present case arises out of Ihnken's efforts in early 2009 to organize the Summer Solstice PROJEKT (the "festival") in Frederick County, Maryland. The festival, which was to run from June 18 to June 21, 2009, would be held at a privately-owned farm in Myersville, Maryland.

Upon reaching an agreement with the farm's owner, Ihnken (along with the landowner) applied for a land-use permit from the Frederick County Health Department to allow the farm to be used for the festival. Prompted to provide an end date and time for the event on the County's permit application form, Ihnken indicated only "5:00." J.A. 1227. Following an inspection by County officials, the County issued a permit allowing the farm to be used for the festival on the appointed dates from "8:00–5:00." Thereafter, the festival began as scheduled on June 18, 2009.

Around 10:00 p.m. that evening, the Frederick County Sheriff's Office began receiving noise complaints from residents living in the vicinity of the festival. In response, the Sheriff's Office dispatched officers to the festival grounds, where they eventually encountered Ihnken. When officers advised Ihnken that state and local laws generally prohibited music events late in the evening, he insisted that the permit he obtained from the County allowed the festival to continue throughout the night. An argument ensued, with officers explaining that the late-night festival likely violated the terms of his permit and Ihnken refusing to end the festival before an upcoming act concluded its performance. Unable to immediately confirm the terms of Ihnken's permit, officers convinced Ihnken to reduce the volume of the festival's music system and commit to ending the festival no later than 3:30 a.m. that evening.

4

Before leaving the scene, the officers informed Ihnken that the Sheriff's Office would continue to investigate Ihnken's permit application when the permit office opened the next morning. The officers further advised Ihnken that continued noise complaints could result in the festival being shut down immediately and the revocation of Ihnken's land-use permit. These admonishments notwithstanding, the festival continued well into the early hours of the next morning. Nearby residents later testified that music from the festival continued until approximately 5:00 a.m., which prompted several additional noise complaints.

Upon learning of these complaints the next morning, Defendant Smith reexamined Ihnken's permit and concluded that it authorized the festival to continue no later than 5:00 p.m. each afternoon. With this in mind, Defendants together traveled to the festival grounds to discuss the noise concerns with Ihnken and attempt to resolve the situation amicably. After waiting for several hours to speak with Ihnken, Defendant Jenkins explained that, given the likelihood of further noise complaints, he hoped to find a way to allow the festival to continue while avoiding the possibility of nearby residents calling officers to the festival grounds that evening and potentially ending the event late at night. With Ihnken again insisting the festival was authorized to continue until 5:00 a.m. each night, Defendant Jenkins proposed a compromise whereby music would instead be allowed to continue until dusk.

When Ihnken rejected this proposal, Defendant Jenkins ordered the festival to be shut down immediately. Defendant Jenkins later testified that, given the number of festival attendees and presence of alcohol on the festival grounds, he was concerned that shutting down the event in the middle of the night would "cause a huge public safety concern." J.A. 817. As such, he concluded that it was in the "best interests of public safety, the [Sheriff's Office], and the [festival's] patrons" to end the event immediately. J.A. 845. Upon conferring with Defendant Jenkins, and in light of Ihnken's apparent intention to continue the festival well after 5:00 p.m., Defendant Smith revoked Ihnken's permit and the festival did not go forward as planned.

Contending that the decision to revoke his permit and prematurely end the festival forced him to refund ticketholders and damaged his reputation as a concert producer, Ihnken initiated this action against various Frederick County officials in December 2011. In addition to other constitutional and state law claims, Ihnken claimed that the revocation of his permit without adequate notice or a meaningful opportunity to contest Defendants' interpretation of the permit's terms violated his procedural due process rights under the Fourteenth Amendment and the Maryland Declaration of Rights.

After an initial motion for summary judgment, the district court dismissed all of Ihnken's claims except his state and federal procedural due process claims.

Some time later, the county defendants again moved for summary judgment as to the remaining claims, with Ihnken cross-moving for summary judgment in his favor. On September 3, 2014, the district court denied Ihnken's cross-motion and granted partial summary judgment to the county officials, dismissing Ihnken's claims against all defendants other than Defendants Jenkins and Smith. Citing outstanding factual issues, the district court allowed Ihnken's claims against Defendants Jenkins and Smith to proceed to trial.

A four-day trial followed, during which the jury heard testimony from Defendants Jenkins and Smith—along with various county and Sheriff's Office officials—and Ihnken regarding their interpretation of the contested permit and their interactions during the weekend of the festival. At the close of evidence, Ihnken did not move for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) before the case was submitted to the jury. The jury returned a verdict in Defendants' favor.

After the jury issued its verdict—and notwithstanding that Ihnken did not file a Rule 50(a) motion before the court submitted the case to the jury—Ihnken moved for judgment as a matter of law or, in the alternative, for a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59. The district court denied these post-trial motions on September 28, 2015, leading to this timely appeal.

II.

On appeal, Ihnken advances three challenges to the rulings below. First, Ihnken argues that the district court erred in denying his pretrial motion for summary judgment on his procedural due process claims against Defendants. Second, Ihnken suggests that, after the close of evidence, the district court errantly failed to award a directed verdict in his favor in lieu of submitting the case to the jury. Finally, Ihnken contends that the district court incorrectly denied his post-trial motion for judgment notwithstanding the jury's verdict or, in the alternative, for a new trial. As explained below, because each of these claims suffers from a fatal procedural flaw, we affirm the judgment below in its entirety.

A.

First, Ihnken argues that the evidence presented by the parties in connection with their respective pretrial motions demonstrated that he was deprived of adequate process before Defendants revoked his permit and abruptly ended the festival. For this reason, Ihnken contends that the district court erred in denying his request for summary judgment on his procedural due process claims and instead allowing these claims to proceed to trial.

But, Ihnken may not challenge this aspect of the judgment below because the denial of a motion for summary judgment is not subject to appeal after a full trial and final judgment on the merits of a given claim. *See Chesapeake Paper*

8

*Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995) (holding that we "will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits"); *see also Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 420 (4th Cir. 2005) (same). Such review is "inappropriate because the denial [of the pretrial summary judgment motion] was based on an undeveloped, incomplete record, which was [then] superseded by evidence adduced at trial." *Chesapeake Paper Prods.*, 51 F.3d at 1236. This preference for live evidence presented at trial is particularly applicable when, as here, the resolution of a claim or defense turns in large measure on the jury's ability to weigh the credibility of the parties' witnesses. *See id.*

Here, a jury viewing the live testimony of Ihnken and Defendants concluded that the land-use permit expired at 5:00 p.m. each day and that Defendants gave Ihnken sufficient notice and opportunity to contest the revocation of his land-use permit before ending the festival. Following a full trial on the merits, the jury thus rejected Ihnken's claims that he was deprived of adequate process by Defendants, and the district court entered a final judgment in Defendants' favor. Accordingly, Ihnken's challenge to the denial of his pretrial motion for summary judgment is not properly before us and must be denied.

B.

Next, Ihnken argues that Defendants failed to adduce sufficient evidence at trial to support a verdict in their favor and, therefore, that the district court erred in submitting the case to the jury. Somewhat confusingly, Ihnken frames this aspect of his appeal as a challenge to the district court's failure "to grant judgment as a matter of law to [Ihnken] . . . at trial." Appellant's Br. at 22.

Ihnken's failure to move for a directed verdict pursuant to Federal Rule of Civil Procedure 50(a) before the court submitted the case to the jury fatally undermines his argument. Under Rule 50(a), after a "party has been fully heard on an issue during a jury trial," an opposing party may move for judgment as a matter of law on the grounds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party" on a particular issue and, under the controlling law, a claim or defense "can be maintained or defeated only with a favorable finding on that issue." FED. R. CIV. P. 50(a)(1). Importantly, such a motion may only "be made . . . before the case is submitted to the jury." FED. R. CIV. P. 50(a)(2).

Here, however, Ihnken made no such motion before the submission of the case to the jury. As a result, "we are substantially foreclosed from reviewing the sufficiency of the evidence" supporting the jury's verdict for Defendants. *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994).

10

Indeed, we have explained that, "[i]n such a procedural posture, our scope of review is exceedingly confined, being limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a manifest miscarriage of justice." *Id.* at 187 (emphasis in original) (internal quotation marks and citations omitted).

Under this deferential standard, we find no basis for reversing the judgment below. In reaching its verdict, the jury found that Defendants did not violate Ihnken's due process rights by "failing properly to provide [Ihnken] notice and an opportunity to be heard before revoking the permit [and] shutting down the music festival." J.A. 1175. Evidence adduced by Defendants at trial supported this conclusion. Most notably, testimony elicited from Defendants regarding their interpretation of the apparent ambiguity in Ihnken's permit application supports the conclusion that Defendants legitimately perceived Ihnken's intransigence as a refusal to comply with the permit's terms. Moreover, given Defendants' understandable public safety concerns and efforts to reach a mutually agreeable arrangement that would permit the festival to continue on an abbreviated schedule, the jury could reasonably have concluded that Ihnken's rejection of this proposal provided a basis to immediately revoke the permit and end the festival.

For these reasons, we find no error amounting to a manifest miscarriage of justice relating to the jury's rejection of Ihnken's procedural due process claims. Accordingly, the district court did not err in submitting the case to the jury.

C.

For much the same reason, we reject Ihnken's argument that the district court erred in denying his request for a judgment notwithstanding the jury's verdict or, alternatively, a new trial.

Entitled "Renewing the Motion After Trial; Alternative Motion for a New Trial," Federal Rule of Civil Procedure 50(b) provides that, when a court "does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." FED. R. CIV. P. 50(b). Should the jury ultimately decide an issue against a party that sought judgment as a matter of law, that party may, within 28 days, "file a *renewed* motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." *Id.* (emphasis added).

In this case, as previously noted, Ihnken did not move for a directed verdict under Rule 50(a) before the submission of the case to the jury. Having not done so, his subsequent post-trial motion was "effectively a nullity, since a Rule 50(b) motion may only be made as a renewal of a motion previously made on the same

12

grounds under Rule 50(a)." *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 501 n.1 (4th Cir. 2001). As before, our review of the denial of such a motion is "limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency." *Id.* at 502 (internal quotation marks omitted) (emphasis in original) (quoting *Bristol Steel*, 41 F.3d at 186).

As discussed above, the evidence presented by Defendants at trial provided ample basis for the jury to conclude that Defendants afforded Ihnken sufficient process before revoking Ihnken's land-use permit due to his refusal to abide by the terms set out by the County. Consequently, the district court did not reversibly err in denying Ihnken's alternative request for judgment notwithstanding the jury's verdict or a new trial on his procedural due process claims.

## III.

For the reasons set out above, each of Ihnken's challenges to the dismissal of his procedural due process claims against Defendants fails. Accordingly, we affirm the judgment of the district court in all respects.

*AFFIRMED*