**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TOM CHESTER,
<u>Plaintiff-Appellee,</u>

v.

WISE COUNTY ELECTORAL BOARD;
TERESA JORDAN, Individually and in
her capacity as a member of the
Wise County Electoral Board; DAN
MCCOY, Individually and in his
capacity as a member of the Wise
County Electoral Board; DAVID                           No. 95-3092
AUDAS, Individually and in his
capacity as a member of the Wise
County Electoral Board,
<u>Defendants-Appellants,</u>

and

PATTI CHURCH, Individually and in
her capacity as a member of the
Wise County Electoral Board,
<u>Defendant.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
Samuel G. Wilson, Chief District Judge.
(CA-95-37-B)

Argued: May 8, 1997

Decided: July 11, 1997

Before MURNAGHAN and HAMILTON, Circuit Judges, and
CURRIE, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Steven Ray Minor, ELLIOTT, LAWSON & POM-
RENKE, Bristol, Virginia, for Appellants. Gerald L. Gray, THE
GERALD GRAY LAW FIRM, Clintwood, Virginia, for Appellee.
**ON BRIEF**: Edward G. Stout, BRESSLER, CURCIO & STOUT,
P.C., Bristol, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellee Tom Chester, General Registrar for Wise County, Vir-
ginia, brought this civil rights action pursuant to 42 U.S.C. § 1983
claiming that the failure of the Wise County Electoral Board to reap-
point him in March 1995, was due to his Democratic political affilia-
tion. Named as defendants were the Wise County Electoral Board
(hereinafter "the Board"), its two Republican members, Teresa Jordan
and Dan McCoy, both of whom had voted against Chester's re-
appointment, and David Audas, the successor General Registrar.[1] Fol-
lowing a two-day trial, the jury returned a verdict against the Electoral
Board,[2] Jordan and McCoy. The trial judge ordered Chester's rein-

_____

[1] Also named as defendant was Board member Patti Church, a Demo-
crat who had voted to reappoint Chester to the Registrar position. The
jury did not return a judgment against Church and she therefore is not
participating in this appeal.
[2] Because the parties had stipulated judgment was to be entered against
the individual defendants only, the court, by order filed November 21,
1995, amended the judgment to correct this. (J.A. 617).

2

statement, effective November 8, 1995. Appellants contend: (1) that the district court erred in denying their motions for judgment as a matter of law based on insufficiency of evidence of unlawful motivation; (2) that the district court abused its discretion in ordering equitable relief in the form of reinstatement; and (3) that the district court erred in several of its evidentiary rulings. Finding no error, we affirm.

I.

On April 1, 1983, Chester first assumed the duties of General Registrar of Wise County. In Virginia, the General Registrar conducts voter registration and elections. VA. CODE ANN. § 24.2-114 (Michie 1997). The county General Registrar is appointed to a four-year term by a majority of the three member county Electoral Board. Id. § 24.2-110. The members of the Electoral Board are appointed by the circuit court for three year terms. Two members of the Board must, however, be from the same political party as the Governor. Id. § 24.2-106. The political parties recommend nominees to the circuit court for Board positions. Id.

Upon the expiration of a Registrar's four-year term, the county Electoral Board is not required to advertise the availability of this position if the incumbent Registrar will be reappointed. (J.A. 367). However, it is impermissible to fail to reappoint a General Registrar on account of political affiliation. Id.

In 1993 Chester was embroiled in marital difficulties with his estranged wife Phyllis. An incident occurred at a local supermarket between Chester and Ronald McMurray, his wife's alleged paramour. As a result of this altercation, Chester pled guilty to a violation of the "cursing and abusing" statute[3] in Wise County Circuit Court.

_____

[3] The cursing and abusing statute provides:

> If any person shall, in the presence or hearing of another, curse or abuse such other person, or use any violent abusive language to such person concerning himself or any of his relations, or otherwise use such language, under circumstances reasonably calculated to provoke a breach of the peace, he shall be guilty of a Class 3 misdemeanor.

VA. CODE ANN. § 18.2-416 (Michie 1997).

3

In November 1993, a Republican Governor of Virginia was elected, which necessitated a change in the political composition of the Wise County Electoral Board. Two Republicans, Jordan and McCoy, were appointed to the Board in late 1993 and the spring of 1994, respectively. The Democratic member, Patti Church, joined the Board in September 1994. McCoy had formerly been an active Democrat but as a result of a slight by the local Democratic party inflicted on his sister, McCoy switched parties and became an active Republican. He vowed he would fight Democrats as long as he lived. Jordan, too, had been active in Wise County Republican politics. The Board became Republican-controlled upon McCoy's appointment.

The Board determines the number and term of field representatives, also known as assistant registrars. Id.§ 24.2-112 (Michie 1997). McCoy spoke to Chester about changing the assistant registrars. McCoy told Chester that Jordan would bring a list of prospective appointees to Chester. A few days later Jordan delivered a list of names of persons to be appointed assistant registrars. The list had come from Paul Varson, the Chairman of the Wise County Republican Party. Nearly all the individuals on the list had previously been active Republicans. Chester directed letters to the individuals, nearly all of whom were later appointed.

On September 25, 1994, Chester had another altercation with Ron McMurray, at a football practice for Chester's son in Smyth County, Virginia. McMurray claimed Chester assaulted him and spit in his face while McMurray was helping coach the team, whereas Chester claimed that McMurray intentionally stepped on his foot and threw a football at him. Chester was charged with committing a misdemeanor assault and battery. Jordan learned of the pending charges in an anonymous telephone call she received on October 24, 1994. Jordan thereafter confirmed that a warrant had been served on Chester by the Sheriff and sought advice from the Wise County Commonwealth Attorney, Tim McAfee, about terminating Chester. McAfee advised against terminating Chester until after trial of the criminal case. Ultimately, in December 1994, Judge Tate of the Smyth County General District Court found Chester guilty of the lesser charge of curse and abuse, and fined him $250.

Chester's tenure as Registrar was to expire on March 31, 1995. At a February 3, 1995, meeting, the Board considered whether it should

4

advertise the General Registrar position. By a 2-1 vote, Jordan and McCoy voted to advertise the position in a local paper. Jordan announced that she did not intend to vote for Chester because of the second conviction for curse and abuse. Jordan contacted the Virginia Employment Commission to advertise the Registrar position. McCoy indicated that Chester would be free to apply for the position like all other candidates.

At a February 14, 1995, Board meeting, controversy erupted over Chester's qualifications for the position, and Jordan's decision not to vote for Chester. At another Board meeting on February 27, 1995, the Board reviewed 28 applications and agreed to interview six candidates, including Chester and Audas. Interviews were conducted on March 3, 1995, and the vote was taken on March 6, 1995. At that meeting Ms. Church moved to reappoint Chester, but the motion failed for lack of a second. Jordan and McCoy voted in favor of Audas, who had previously been active in Republican politics and who had served as campaign chairman for an unsuccessful Republican congressional candidate. McCoy stated that the reason he had not voted to reappoint Chester was because he had recently applied for the vacant Circuit Court Clerk's position, which McCoy maintained Chester was prohibited from pursuing, and because of an alleged disclosure of confidential matters discussed in the Registrar's office. Jordan stated that she voted against Chester because of his curse and abuse convictions.

Chester initiated suit immediately upon expiration of his term of office. The parties agreed that the scheme of proof set forth in Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274 (1977), governed. By special verdict form, the jury found that Chester had proved by a preponderance of the evidence that his party affiliation had been a substantial motivating factor in Jordan and McCoy's decisions not to reappoint him. (J.A. 458-59). The jury further found that neither Jordan nor McCoy had proved by a preponderance of the evidence that they would have voted not to reappoint Chester for reasons independent of his party affiliation. Id. The parties stipulated as to past economic losses. The jury returned a verdict of $5,000 compensatory damages against both Jordan and McCoy for Chester's pain, suffering, emotional distress, and humiliation. The court next considered whether reinstatement or a front pay award should be ordered. Fol-

5

lowing an evidentiary hearing at which Chester, several current and former Board members, an assistant registrar, and Mr. Audas testified, the court ordered reinstatement. (J.A. 606-11). The court concluded that the balance of equities favored Chester. It reasoned that Appellants had failed to show equitable considerations different in kind or degree from those normally accompanying the reinstatement of a discharged employee and that reinstatement afforded Chester make-whole relief. The court denied Appellants' posttrial motions for judgment as a matter of law, for a new trial, and for a stay. This appeal followed.

II.

Appellants contend there was no direct evidence of political retaliation and insufficient circumstantial evidence to support such a conclusion. Thus, they contend that there was no legally sufficient evidentiary basis for a reasonable jury to have found that McCoy and Jordan's decision not to reappoint Chester was substantially motivated by his political affiliation and that he would not have been reappointed for other reasons, Rule 50(a) & (b), Fed. R. Civ. P. We disagree.

In reviewing a Rule 50 determination, this court's review is circumscribed as to any facts the jury found, but is plenary as to any legal conclusions underlying the verdict. As the court has previously recognized:

> Judgment as a matter of law is proper "when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." The movant is entitled to judgment as a matter of law "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." While our review of this motion is plenary, it is also circumscribed because we must review the evidence in the light most favorable to [the nonmoving party].

Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir. 1996) (citations omitted). Appellants bear the "hefty burden" in establishing that the evidence is insufficient to support the award. Id. (quoting Bristol

6

Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 186-87 (4th Cir. 1994)). We may not substitute our judgment for that of the jury or make credibility determinations, and if there is evidence on which a reasonable jury may return a verdict in favor of Appellee, we must affirm. Id. (citations omitted).

A termination based solely on an employee's political affiliation is a deprivation of his First Amendment rights to freedom of association and freedom of belief. Elrod v. Burns, 427 U.S. 347 (1976). In Mt. Healthy City School District Bd. of Educ. v. Doyle , 429 U.S. 274 (1977), the Supreme Court established a test for analyzing discharge cases involving both constitutionally protected and unprotected activity. In the first step, the employee bears the burden of establishing the requisite causation by proof that the protected activity was a motivating factor or played a substantial role in the discharge. Id. at 287; Hall v. Marion School Dist. No. 2, 31 F.3d 183, 193 (4th Cir. 1994). If the employee is able to prove this, then the second step shifts the burden to the employer to put forward evidence that it would have fired the employee even in the absence of the protected activity. Mt. Healthy, 429 U.S. at 287.

Our review convinces us that the evidence adequately supports the jury's two determinations under Mt. Healthy. As to whether Chester's political affiliation was a motivating factor to Board member McCoy, the jury heard substantial evidence showing that he, indeed, intended to fight Democrats "as long as he lived." On two occasions McCoy told former Delegate Jim Robinson that he was under pressure not to reappoint Chester. He told Buddy Cantrell the same thing. Of considerable significance to the jury on the issue of McCoy's credibility might have been the sharply conflicting evidence concerning a football game in September 1994. Two witnesses, Cantrell and Baker, placed McCoy at the game distributing political literature in support of Oliver North's campaign. Cantrell testified that McCoy stated there that he wished to replace Chester with a "good Republican," (J.A. 122), such as Danny Baker, and Baker testified that McCoy wanted to put him into some type of political appointment because of his Republican connections. In contrast, McCoy flatly denied even attending the football game or having such conversations.

Similarly, sufficient evidence existed to permit a reasonable juror to conclude that McCoy's stated reasons for not reappointing Chester

7

--his application for the vacant Clerk of Court's position, and the alleged disclosure of confidential matters involving Karen Kaylor-- were clearly pretextual and that Chester would have been reappointed absent his political affiliation. The vacancy in the Clerk of Court's office did not occur until November 1994, and McCoy did not learn of the alleged disclosure of confidential matters until late February or early March of 1995. However, the jury heard evidence that McCoy was taking active steps to replace Chester long before these events. McCoy's statements at the football game, and his subsequent admissions to Robinson that he was under pressure not to reappoint Chester, provided an adequate basis for the jury's conclusion that McCoy harbored impermissible political considerations long before the cited reasons for discharge appeared.

As to Board member Jordan, the jury heard evidence tending to show she was acting at the behest and command of the county Republican Party chairman. Although she insisted that her decision not to reappoint Chester was based solely on his second curse and abuse conviction, Cheryl Bailey testified that even before the second charge became known, Jordan stated that she was under pressure to get rid of Chester. Jordan also wanted Republicans to be appointed to the assistant registrar positions, and hand carried the list of names from the county Republican Party chairman to Chester. She admitted questioning some of the Registrar interviewees about their political affiliations. From such evidence, the jury could reasonably have concluded that Chester's political affiliation was a substantial motivating factor in Jordan's decision and that her professed reason for not reappointing him--the second curse and abuse conviction--was merely pretextual.

Based on the foregoing, the trial judge properly refused to grant Appellants' trial and posttrial motions for judgment as a matter of law.

III.

The next contention is that the district court improvidently ordered reinstatement. Reinstatement is an equitable remedy which is reviewed for abuse of discretion. See, e.g., Schwartz v. Gregori, 45 F.3d 1017, 1023 (6th Cir. 1995). We accord considerable deference to a reinstatement order, as the district court "has had first-hand expo-

8

sure to the litigants and the evidence . . . [and] is in a considerably better position to bring the scales into balance than an appellate tribunal." Hiraldo-Cancel v. Aponte, 925 F.2d 10, 12 (1st Cir. 1991), quoting Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 323 (1st Cir. 1989) (en banc).

Although we have not had recent occasion to consider the appropriateness of reinstatement based on a First Amendment violation, our longstanding precedent confirms such a make-whole remedy. In Jannetta v. Cole, 493 F.2d 1334 (4th Cir. 1974), the court reversed the district court's refusal to order reinstatement in a § 1983 claim involving discharge of a fireman for First Amendment activity. As we recognized, "where there is no lawful basis for the discharge, the plaintiff is entitled to be restored to the position he occupied when he attempted to exercise his constitutionally protected right which led to the discharge. Thus the remedy for constitutionally impermissible discharge from public employment is back pay and reinstatement." Id. at 1337. In a case strikingly similar to this one, where two county registrars and an assistant registrar were not reappointed due to their political affiliations, this court affirmed the trial court's order requiring reinstatement. McConnell v. Adams, 829 F.2d 1319 (4th Cir. 1987).

Appellants argue that Spagnuolo v. Whirlpool Corp., 717 F.2d 114 (4th Cir. 1983), prohibits the court from ordering reinstatement when it bumps an innocent third-party in favor of the victim of discrimination. We think Appellants construe Spagnuolo too broadly. Spagnuolo was an Age Discrimination in Employment Act (ADEA) case in which the court's recognition of the "rightful place" theory rested on Title VII legislative history. We do not believe it circumscribes the court's determination of a make-whole remedy in a § 1983 political discharge case.

Here the trial judge received considerable evidence on reinstatement and concluded that Appellants failed to show "equitable considerations different in kind and degree" from those normally accompanying reinstatement. (J.A. 610). These findings were not clearly erroneous. Both Jordan and McCoy assured the court they could put aside their feelings and continue to work with Chester. Chester also confirmed that he could resume his position with no bad

9

feelings, a statement that was particularly credible given that he had been able to do so years earlier when he had been wrongfully discharged and reinstated.[4] The court also found that the position of Registrar did not involve a traditional employer/employee relationship because daily contact with the Board was not required. The court observed that application of the "rightful place" doctrine was also inappropriate here because Appellants offered "no comparable employment and there is no prospect of vacancy in the general registrar's post." (J.A. 610). Finally, Chester testified as to the positive impact of reinstatement on the vesting of his pension rights.[5] The trial court weighed the appropriate factors and we conclude the decision ordering reinstatement was not an abuse of discretion.

IV.

A.

Appellants' remaining exceptions pertain to three evidentiary rulings. These claims are reviewed for abuse of discretion. United States v. Heater, 63 F.3d 311, 320 (4th Cir. 1995). First, Appellants contend the district court erred in permitting Cheryl Bailey to read from notes she had made concerning a conversation with Jordan on October 26, 1994. (J.A. 365-66). Although Appellants acknowledge that Fed. R. Evid. 803(5) permits the introduction of such hearsay testimony if the notes were shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly, they contend there was no showing that her memory was fresh when she made the notes. Furthermore, Appellants contend that admission of Bailey's testimony was unduly prejudicial and formed the basis of the verdict against Jordan.

_____

[4] A schism in a Democratic-controlled Electoral Board had led to Chester's failure to be reappointed in 1991. Chester was reinstated only after prevailing at an earlier trial.

[5] We agree with the First Circuit's observation that, "reinstatement, even for a brief interlude, often affords ancillary benefit to the employee, such as increased seniority, and enhanced eligibility for pension vesting, which do not obtain as consequences of a traditional backpay award." Hiraldo-Cancel, 925 F.2d at 13.

10

Appellants' contention is without foundation in the record. The transcript reveals that the trial judge correctly applied the hearsay exception for recorded recollection testimony set forth in Rule 803(5). The judge repeatedly questioned Ms. Bailey concerning the accuracy of the notes when they were made. (J.A. 75, 76). Consistent with the Rule, the judge then ruled that although the notes could be read into evidence, they could not be received as an exhibit. Moreover, as to Appellants' prejudice argument, Fed. R. Evid. 403 recognizes that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. However, we have repeatedly held that in reviewing decisions to admit or exclude evidence, "the appraisal of the probative and prejudicial value of evidence under Rule 403 is entrusted to the sound discretion of the trial judge; absent extraordinary circumstances, the Court of Appeals will not intervene it its resolution." United States v. Morison, 844 F.2d 1057, 1078 (4th Cir. 1988). We do not believe the trial court erred in this balancing.

B.

Appellants next contend that the court erred in not permitting McMurray to testify to the details of the two altercations with Chester. Our review convinces us that the trial court recognized the limited relevancy of such testimony. The issue before the jury in this case was why Appellants refused to reappoint Chester, not who instigated the squabbles between Chester and McMurray. The court correctly recognized that the altercations were only relevant insofar as they were known to and relied upon by Appellants in failing to reappoint Chester. The court did not abuse its discretion in excluding McMurray's testimony because neither McCoy nor Jordan had relied on McMurray's personal account in reaching their decisions not to reappoint Chester.

C.

Finally, Appellants contend the district court erred in allowing Plaintiff's counsel to question Audas and Jordan concerning alleged racial epithets spoken by Audas. However, Jordan testified that she had refused to reappoint Chester because of her longstanding opposition to cursing and abusive language. The trial court allowed the

11

cross-examination on the basis that it might tend to contradict Jordan's testimony that she could not support a candidate for the Registrar position who used abusive language.

The trial judge has broad discretion to control the scope and extent of cross-examination. <u>Davis v. Alaska</u>, 415 U.S. 300, 316 (1974); <u>United States v. Morsley</u>, 64 F.3d 907, 918 n.10 (4th Cir. 1995) ("broad latitude afforded a trial judge in controlling cross-examination"). Here, the district court acted within the scope of its considerable discretion in fashioning the reach of counsel's cross-examination of a witness concerning her allegedly inconsistent positions.

Based on the foregoing, we affirm the judgment below.

<u>AFFIRMED</u>