**Delores NICHOLS, Plaintiff-Appellee,**

v.

**ASHLAND HOSPITAL CORPORATION, d/b/a King's Daughters' Medical Center, Defendant-Appellant,**

**and**

**Fred L. Jackson, Defendant.**

Delores Nichols, Plaintiff-Appellant,

v.

Ashland Hospital Corporation, d/b/a King's Daughters' Medical Center, Defendant-Appellee,

and

Fred L. Jackson, Defendant.

Nos. 00–1827, 00–1832.

United States Court of Appeals, Fourth Circuit.

Argued April 2, 2001.

Decided May 25, 2001.

**ARGUED:** Carl D. Edwards, Jr., Vanantwerp, Monge, Jones & Edwards, Ashland, KY, for Appellant. John Allen Kessler, St. Albans, WV, for Appellee. **ON BRIEF:** Raymond C. Haley, Woodward, Hobson & Fulton, L.L.P., Louisville, KY; Thomas J. Obrokta, Jr., Jenkins, Fenstermaker, P.L.L.C., Huntington, WV, for Appellant. Timothy R. Murphy, Charleston, Jeffrey T. Jones, Law Offices of Jeffrey T. Jones, P.L.L.C., Charleston, WV, for Appellee.

Before LUTTIG and TRAXLER, Circuit Judges, and THORNBURG, United States District Judge for the Western District of North Carolina, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

Appellee Delores Nichols ("Nichols") brought this action against her former employer, appellant Ashland Hospital Corporation ("Ashland"), alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*, and the Kentucky Civil Rights Act, Ky. Rev. Stat. Ann. § 344 *et seq.* Ashland appeals the district court's denial of its motion for a new trial on the FMLA claim, for which the jury awarded damages and back pay to Nichols. Nichols cross-appeals the district court's denial of her post-trial motion for front pay. For the reasons set forth below, we affirm.

## I.

Delores Nichols was employed by the King's Daughters' Medical Center (the "Medical Center"), which is owned by Ashland Hospital Corporation, from June 1991 to January 1997. Nichols was hired as the Medical Center's Director of Surgical Services and was subsequently promoted to Vice President of Nursing, a senior management position that she held until she was terminated on January 16, 1997. Following her termination, Nichols brought this action alleging that Ashland violated the FMLA and Kentucky state law by firing her in retaliation for her request for medical leave to recover from brain surgery.

The evidence at trial focused primarily on the conflicting testimony of Nichols and Fred Jackson, Ashland's Chief Executive Officer, concerning the events leading to Nichols' termination. Jackson testified that he fired Nichols for poor job performance and insubordination. He stated at trial that he informed Nichols at her performance review in November 1996 that he was dissatisfied with her work that year. J.A. 462–72. Jackson also testified that following a staff meeting on January 14, 1997, Nichols instigated a confrontation with him during which she was "hostile, angry, and upset" and during which she accused him of being

dishonest and of not acting in the best interests of the Medical Center. J.A. 501–02. Jackson then decided to fire Nichols. At the suggestion of the Medical Center's legal counsel, he prepared a memorandum documenting Nichols' supposed performance deficiencies. J.A. 502, 637–41. Two days later, Jackson terminated Nichols' employment with Ashland.

Nichols' account of the months leading up to her termination directly contradicted Jackson's testimony. Nichols testified that Jackson did not raise any criticisms at her performance evaluation in November 1996, and that, in fact, he complimented both her work ethic and her contribution to the Medical Center's success. J.A. 49, 524–26. Nichols also testified, and Ashland did not dispute, that Jackson gave her a $9,000 bonus and a five-percent salary increase at the end of 1996. Further, Nichols denied any insubordinate behavior toward Jackson following the staff meeting on January 14. According to her, when she entered Jackson's office he was "furious" and "irate," having just completed a telephone conversation. Nichols testified that she then asked Jackson about scheduling her sick leave to recover from brain surgery, which he angrily refused to discuss. J.A. 68-71. Two days later, Jackson terminated Nichols' employment.

After her termination, Nichols sought psychiatric treatment from Dr. Jack Dodd, who testified on Nichols' behalf at trial. Dodd diagnosed Nichols with "major depressive disorder, and panic disorder, with agoraphobia," and he attributed her mental state to the loss of her employment. J.A. 313, 318. He testified that he had recommended Nichols not return to work as of the time of trial because she was not "able to function well enough" to do so. J.A. 317.

Following three days of testimony by Jackson, Nichols, Dodd, and several other witnesses, counsel made closing arguments. When Ashland's counsel argued that Nichols timed her surgery to coincide with her termination to create the appearance of a retaliatory discharge, Nichols rose from her chair and exclaimed, "I'm going to have brain surgery for a job?" The district court immediately admonished Nichols for her behavior, told her to leave the courtroom, and specifically instructed the jury to disregard the outburst. Counsel for both parties then completed their closing arguments, and the case was submitted to the jury.

The jury found for Ashland on the state-law claim and for Nichols on her FMLA claim, awarding her full back pay and the value of lost benefits. Ashland appeals the district court's denial of its motion for a new trial pursuant to Fed. R. Civ. P. 59. Nichols challenges the district court's denial of her post-trial motion for equitable relief in the form of front pay.

## II.

The decision to grant or deny a new trial under Fed. R. Civ. P. 59 rests "with the sound discretion of the district court, and we review this decision for a clear abuse of discretion." *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir.1994). Indeed, the district court's decision "is not reviewable upon appeal, save in the most exceptional circumstances." *Id.* (internal citations omitted). Ashland argues that the district court abused its discretion in denying the motion for a new trial because Nichols' outburst during closing arguments irreparably prejudiced the jury's deliberations and because the jury's finding of liability and damages on the FMLA claim is unsupported by the evidence presented at trial. We disagree.

### A.

The district court described Nichols' outburst as follows:

[Nichols] stood up from her seat at counsels' table and, in an emotionally charged outburst, addressed the Court. She said something to the effect of, "your honor, please ... I'm going to have brain surgery for a job?" The courtroom fell silent and the Court promptly instructed [Nichols] to exit the courtroom. [Nichols] was visibly crying during her statement to the Court. As [Nichols] was leaving, the Court gave the jury the following instruction: "Ladies and gentlemen, let me instruct you to ignore the outburst by the plaintiff. It was inappropriate."

J.A. 1310. The district court denied Ashland's Rule 59 motion because it held that Nichols' "comment was not so prejudicial to [Ashland] as to warrant a new trial," particularly in light of the court's immediate curative instruction.

██ Despite the impropriety of Nichols' conduct, we conclude that the district court did not abuse its broad discretion in denying Ashland's motion for a new trial. First, the district court made an explicit finding that the "emotionally charged" nature of Nichols' conduct had an effect on the jury that was "minimal at worst." J.A. 1311. We defer to the district court's finding because it was "in a position to see and hear" Nichols' demeanor and the jurors' reactions to it "from a perspective that an appellate court can never match" by reading a cold transcript of the proceedings. *Bristol Steel,* 41 F.3d at 186.

██ Second, the risk of any prejudice either from the emotional nature of the outburst or from its substantive import was minimized by the district court's specific, contemporaneous instruction to the jury to ignore Nichols' comment. For, "while it may not always be simple for the members of a jury to obey" a curative instruction, there is an "almost invariable assumption of the law that jurors follow their instructions...." *Richardson v. Marsh,* 481 U.S. 200, 206–07, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (internal citations omitted). Here, the verdict confirms the assumption that the jury did, in fact, follow the court's directive and that the deliberations were not tainted by prejudice against Ashland. The jury held the Medical Center liable only on the FMLA claim and not on Nichols' cause of action under the Kentucky Civil Rights Act. We can infer from the partial verdict in favor of Ashland that the jury was *not* swayed by passion or prejudice in the wake of the outburst, but rather "conscientiously followed ... instructions[to] disregard[ ] the improper statements and conduct." *United States v. West,* 877 F.2d 281, 288 (4th Cir.1989) (denial of criminal defendants' motion for mistrial was not an abuse of discretion since the defendants' partial acquittal supported the inference that the jury's deliberations were not tainted by prejudice and that the jury followed the court's instructions to ignore multiple outbursts). Accordingly, in light of the curative instruction provided, we affirm the district court's denial of Ashland's motion for a new trial based on Nichols' outburst.

### B.

██ Ashland next argues that the district court abused its discretion in denying the motion for a new trial since the jury's verdict was against the clear weight of the evidence. But Ashland, as it conceded at oral argument, did not move for judgment as a matter of law on Nichols' FMLA claim pursuant to Fed. R. Civ. P. 50(a),[1]

---

1. Ashland did make a post-trial motion for judgment as a matter of law on the FMLA claim pursuant to Fed. R. Civ. P. 50(b). However, that motion was effectively a nullity, since a Rule 50(b) motion may only be made as a renewal of a motion previously made on

and consequently "our scope of review is exceedingly confined, being limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency...." *Bristol Steel*, 41 F.3d at 186 (emphasis in original) (internal citations omitted). For, as we have explained:

[An appellant's] motion for a new trial does not create the avenue for searching review that its failure to move for judgment as a matter of law foreclosed.... Were it otherwise, a party could open the door to review via Rule 59, even though its prior failure closed the same door via Rule 50. In reviewing the evidence through the medium of a motion for a new trial after failure to move for judgment as a matter of law, we do not review "sufficiency" in its technical sense. What is at issue is whether there was an *absolute absence of evidence* to support the jury's verdict.

*Id.* (internal citations omitted) (emphasis added).

Ashland argues that it is entitled to a new trial even under this stringent standard because Nichols failed to prove that Ashland's proffered reasons for terminating her were pretextual, as required by the FMLA, and because Nichols failed to mitigate her damages by seeking other employment. Because we cannot say that there is an absolute absence of evidence supporting the jury's verdict, we affirm the district court's denial of Ashland's motion for a new trial.

### 1.

██ If an FMLA plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation and the employer offers a non-discriminatory explanation for the plaintiff's termination, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160-61 (1st Cir.1998); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (Title VII case). Ashland argues that there was no evidence to support the jury's finding that the proffered reasons for Nichols' termination—insubordination and poor job performance—were pretextual. We disagree.

As to Nichols' alleged insubordination, Jackson and Nichols testified to very different accounts of the encounter in Jackson's office. Indeed, Nichols flatly denied the insubordinate conduct of which Jackson accused her. The jury was entitled to credit her testimony over Jackson's, and accordingly to conclude that Jackson's account of Nichols' insubordination was fabricated to mask the retaliatory reason for her termination.

Likewise, the record also includes evidence from which a jury could infer that Ashland was never dissatisfied with Nichols' job performance. First, the record establishes that no written complaints about Nichols were documented in her personnel file until the day before she was fired, despite Ashland's policy that complaints about employees should be recorded contemporaneously. J.A. 502, 639. The jury could have concluded that the last-minute documentation of Nichols' job performance supports the inference that Jackson contrived Nichols' alleged performance deficiencies, *after* learning of her request for

---

the same grounds under Rule 50(a). *See* Fed. R. Civ. P. 50(b) ("The movant may *renew* its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment ...." (emphasis added)).

For this reason, the district court denied Ashland's motion under Rule 50(b). J.A. 1306. Ashland does not challenge the district court's ruling on appeal.

sick leave, in order to create the appearance of a non-discriminatory reason for Nichols' termination.

Second, based on conflicting testimony regarding Nichols' performance review, the jury could also have disbelieved Jackson's trial testimony that he was dissatisfied with Nichols' performance in 1996. For, while Jackson testified that during the performance review he pointed out five deficiencies in Nichols' work that needed improvement, J.A. 462, Nichols testified emphatically that "there was no criticism during the performance review" and that, in fact, Jackson complimented her on her work ethic and contributions to the Medical Center. J.A. 49.

Third, the jury could have believed not only that Nichols' performance evaluation was complimentary but also that Ashland was satisfied with Nichols' performance because she received a $9,000 bonus for 1996 and a five-percent pay increase at her performance review. J.A. 50. Indeed, Nichols received bonuses for every year of her tenure at the Medical Center, during which her salary increased from $40,000 to $92,000. J.A. 35–40, 50.

Thus, we cannot say that there was no evidence from which a jury could conclude that Ashland fabricated complaints about Nichols' job performance and alleged insubordination as pretextual reasons for her termination.

### 2.

■ Ashland also argues that it is entitled to a new trial because Nichols produced no evidence to rebut Ashland's defense that she failed to mitigate her damages by seeking other paid employment. We reject this argument as well.

In awarding back pay to Nichols, the jury concluded that the Medical Center had not:

> proven by a preponderance of the evidence that plaintiff, at some point, failed to exercise *reasonable diligence* and care in seeking employment that is substantially equivalent to her prior position *in light of her individual characteristics, her health,* and the job market.

J.A. 914 (emphasis added).[2] Evidence supporting Nichols' claimed inability to seek such employment was adduced through the testimony of her treating psychiatrist, Dr. Dodd, who stated that Nichols was "unable to function" in a paying job because of her severe depression and panic disorder, which he attributed to her termination by Ashland. J.A. 313, 318.

Ashland vigorously cross-examined Dodd, challenging his credibility based on, *inter alia,* the lack of formal tests underlying his diagnosis and recommendation. Yet Ashland presented no contrary psychiatric testimony to rebut Dodd's claim at trial, and the jury was entitled to credit Dodd's testimony about Nichols' mental state in considering whether Nichols' admitted failure to seek paid employment was "reasonable . . . in light of her individual characteristics [and] her health." J.A. 914. Accordingly, we cannot say there was a lack of *any* evidence supporting the jury's verdict, and we affirm the district court's denial of Ashland's motion for a new trial on the question of damages.

### III.

■ Nichols cross-appeals the district court's denial of her post-trial motion for front pay from the date of trial through her expected retirement at age 65. The FMLA provides that "the employer . . . shall be liable, . . . for equitable relief as

**2.** Ashland does not challenge this jury instruction on appeal.

may be appropriate...." 29 U.S.C. § 2617(a)(1)(B). Such equitable relief may include front pay. *Cline v. Wal–Mart Stores, Inc.,* 144 F.3d 294, 307 (4th Cir. 1998). The award of front pay rests squarely within the district court's discretion, which must be "tempered" by "the potential for windfall" to the plaintiff. *Duke v. Uniroyal, Inc.,* 928 F.2d 1413, 1424 (4th Cir.1991) (Title VII case); *see also Hardin v. Caterpillar, Inc.,* 227 F.3d 268, 269 (5th Cir.2000) (FMLA case).

■ Nichols argues that the emotional trauma she suffered as a result of wrongful discharge impaired her so severely that she can *never* return to gainful employment. At the post-trial hearing on Nichols' motion for front pay, Dodd testified that Nichols' condition had worsened since trial and that she would not be able to work again. However, Dodd conceded that he had not performed any tests or formal psychiatric assessments to support his conclusion. Moreover, unlike at trial, Ashland put forth its own psychiatric expert, Dr. David Shraberg, who testified that he did not believe Nichols was "so depressed and so neurocognitively impaired or so traumatized from work that she couldn't go back to a wide variety of jobs in the work-

place...." J.A. 1240. Shraberg further testified that to the extent Nichols "indeed is unable to work, it's not attributed [sic] to her period of employment at the [Medical Center]." J.A. 1225.

■ Faced with conflicting opinions about whether Nichols' discharge from the Medical Center so debilitated her that she will never be able to return to work, the district court was not bound to accept Dodd's "dire forecast"—uncorroborated by clinical evidence—about Nichols' future employment prospects.[3] J.A. 1300. Because the district court was within its discretion to credit Shraberg's testimony over Dodd's, we affirm the district court's denial of front pay.

## CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.[4]

*AFFIRMED.*

**3.** Contrary to Nichols' argument, the district court's denial of front pay is not inconsistent with the jury's award of back pay. As the Eighth Circuit has explained, front pay and back pay are concerned with different temporal periods, and "[t]he number of suitable jobs which a plaintiff could be expected to locate would likely increase as the temporal length of the job search increases." *Excel Corp. v. Bosley,* 165 F.3d 635, 640 (8th Cir. 1999). In awarding back pay to Nichols, the jury credited Dodd's trial testimony that Nichols was unable to work between the time of her termination and the date of trial. In contrast, the issue before the district court in ruling on Nichols' motion for front pay turned on the credibility of Dodd's controverted post-trial testimony that Nichols would be unable to work during a different temporal period—

that is, between the time of trial and her anticipated retirement age of 65.

**4.** Ashland also challenges the district court's award of attorneys' fees. The district court did not abuse its discretion in setting the hourly rate for Nichols' attorney, since the court based its decision on affidavits from lawyers in the community with comparable skills and experience. J.A. 1290-91; *Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir.1987) (court must consider "specific evidence of the prevailing market rates in the relevant community for the type of work" involved in the case). Nor did the court abuse its discretion by refusing to reduce the award of attorneys' fees to account for Nichols' lack of success on her state-law claim, since the state-law and FMLA claims contained "a common core of facts ... making it difficult to divide the hours expend-

ed.*" Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).